1   Moez M. Kaba, State Bar No. 257456
    mkaba@hueston.com
2   Allison L. Libeu, State Bar No. 244487
    alibeu@hueston.com
3   Sourabh Mishra, State Bar No. 305185
    smishra@hueston.com
4   HUESTON HENNIGAN LLP
    523 West 6th Street, Suite 400
5   Los Angeles, CA 90014
    Telephone: (213) 788-4340
6   Facsimile: (888) 775-0898

7   *Attorneys for Defendants*
    *Shopify Inc. and Shopify (USA) Inc.*

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12  MY CHOICE SOFTWARE, LLC, a California      Case No. 4:23-cv-02687-DMR
    limited liability company, individually, and on
13  behalf of all others similarly situated,    **DEFENDANTS' SHOPIFY INC. AND
                                                 SHOPIFY (USA) INC.'S NOTICE OF
14                Plaintiff,                     MOTION AND MOTION TO DISMISS
                                                 PLAINTIFF MY CHOICE SOFTWARE,
15        vs.                                    LLC'S COMPLAINT; MEMORANDUM OF
                                                 POINTS AND AUTHORITIES IN SUPPORT**
16  SHOPIFY, INC., a Canadian Corporation;
    SHOPIFY (USA) INC., a Delaware              Hearing Date:   July 13, 2023
17  Corporation; TASKUS, INC. a Delaware        Hearing Time:   1:00 p.m.
    Corporation; and DOES 1 through 100,        Judge:          Hon. Donna M. Ryu
18  inclusive,

19                Defendants.

20

21                          **FILED UNDER SEAL**

22

23

24

25

26

27

28

6415780

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

I.  INTRODUCTION ........................................................................................................ 2

II.  ISSUES TO BE DECIDED ......................................................................................... 5

III.  BACKGROUND .......................................................................................................... 5

    A.  The Parties and Their Relationship ............................................................. 5

    B.  Criminal Actors Steal MCS Customer Information from TaskUs and
        Shopify, Inc. .................................................................................................. 6

    C.  The Parties Litigated the Proper Forum for MCS's Claims in the
        Central District Case ..................................................................................... 6

IV.  ARGUMENT ................................................................................................................ 7

    A.  Issue Preclusion Bars MCS's Claims Against the Shopify Defendants ................. 7

        1.  The Court in the Central District Action Already Decided the
            Issue in this Case—the Enforceability and Applicability of the
            Forum Selection Clause ........................................................................ 8

        2.  MCS and the Shopify Defendants Actually Litigated the
            Enforceability and Applicability of the Forum Selection
            Clause ................................................................................................. 11

        3.  The Forum Selection Clause Was Critical and Necessary to
            Dismissal in the Central District Case .................................................. 12

    B.  MCS Agreed to a Forum Selection Clause Mandating that All
        Disputes Be Heard in Ontario Canada ......................................................... 13

        1.  The Forum Selection Clause Applies to the Claims Against
            the Shopify Defendants ......................................................................... 13

        2.  MCS Cannot Show the Extraordinary Circumstances
            Required to Overcome Application of the Forum Selection
            Clause ................................................................................................. 16

    C.  This Court Does Not Have Personal Jurisdiction Over the Shopify Defendants . 18

        1.  There is No General Jurisdiction Over the Shopify
            Defendants .......................................................................................... 18

        2.  There Is No Specific Jurisdiction Over the Shopify
            Defendants .......................................................................................... 20

    D.  MCS Lacks Statutory Standing to Bring Consumer Claims ................................ 24

V.  CONCLUSION ............................................................................................................ 25

SHOPIFY DEFENDANTS' MOTION TO DISMISS
Case No. 4:23-cv-02687-DMR

6415780

1

# TABLE OF AUTHORITIES

2

Page(s)

Cases

3

4

*Adema Techs., Inc. v. Wacker Chem. Corp.*,
  657 F. App'x 661 (9th Cir. 2016) ................................................................. 15

5

*Alternate Health USA Inc. v. Edalat*,
  2022 WL 767573 (C.D. Cal. Mar. 14, 2022) ............................................... 24

6

7

*Amoco Egypt Oil Co. v. Leonis Nav. Co.*,
  1 F.3d 848 (9th Cir. 1993) ..................................................................... 23, 24

8

9

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
  480 U.S. 102 (1987) ..................................................................................... 23

10

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
  571 U.S. 49 (2013) ........................................................................... 4, 13, 17

11

12

*Best Odds Corp. v. iBus Media Ltd.*,
  655 F. App'x 582 (9th Cir. 2016) ................................................................ 19

13

14

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ................................................................................. 4, 18

15

16

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ............................................................... 18, 21

17

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................... 21

18

19

*Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ....................................................................... 21

20

21

*Caces-Tiamson v. Equifax*,
  2020 WL 1322889 (N.D. Cal. Mar. 20, 2020) ....................................... 22, 23

22

23

*Color Switch LLC v. Fortafy Games DMCC*,
  818 F. App'x 694 (9th Cir. 2020) ................................................................ 16

24

*Core-Vent Corp. v. Nobel Indus. AB*,
  11 F.3d 1482 (9th Cir. 1993) .................................................................. 23, 24

25

26

*Cumis Ins. Soc'y, Inc. v. Merrick Bank Corp.*,
  2008 WL 215844 (D. Ariz. Jan. 22, 2008) .................................................. 25

27

28

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..................................................................................... 19

SHOPIFY DEFENDANTS' MOTION TO DISMISS
Case No. 4:23-cv-02687-DMR

6415780

*Dipito LLC v. Manheim Inv., Inc.*,
  2021 WL 5908994 (S.D. Cal. Dec. 14, 2021) ............................................................................. 25

*Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*,
  769 F. App'x 429 (9th Cir. 2019) ............................................................................................. 15

*Garcia v. NutriBullet, L.L.C.*,
  2022 WL 3574699 (C.D. Cal. July 14, 2022) ........................................................................... 19

*HID Glob. Corp. v. Isonas, Inc.*,
  2014 WL 10988340 (C.D. Cal. Apr. 21, 2014) ......................................................................... 19

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F. 3d 450 (9th Cir. 2007) ................................................................................................... 20

*Hydranautics v. FilmTec Corp.*,
  204 F.3d 880 (9th Cir. 2000) ....................................................................................................... 8

*In re Koebel*,
  2014 WL 1654342 (Bankr. C.D. Cal. Apr. 25, 2014) ............................................................... 11

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......................................................................... 14

*Juniper Networks, Inc. v. Andrade*,
  2021 WL 3514103 (N.D. Cal. Aug. 10, 2021) ..................................................................... 18, 24

*Kamilche Co. v. United States*,
  53 F.3d 1059 (9th Cir. 1995) ...................................................................................................... 8

*LaGuardia v. Designer Brands, Inc.*,
  2020 WL 2463385 (S.D. Cal. May 7, 2020) ............................................................................. 19

*Levine Leichtman Cap. Partners III v. Shaker Constr. Grp.*,
  2008 WL 11336663 (C.D. Cal. May 2, 2008) ........................................................................... 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ...................................................................................................... 4, 24, 25

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) ...................................................................................................................... 17

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
  858 F.2d 509 (9th Cir. 1988) .......................................................................................... 9, 14, 15

*McNally v. Kingdom Tr. Co.*,
  2020 WL 7786539 (C.D. Cal. Nov. 13, 2020) .......................................................................... 14

*Mehr v. Fed'n Internationale de Football Ass'n,*
  115 F. Supp. 3d 1035 (N.D. Cal. 2015) .................................................................................. 19

*Modius, Inc. v. Psinaptic, Inc.,*
  2006 WL 1156390 (N.D. Cal. May 2, 2006) ......................................................................... 18

*Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO,*
  215 F.3d 923 (9th Cir. 2000) ................................................................................................ 10

*Moretti v. Hertz Corp.,*
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ...................................................................... 14

*Muddy Waters, LLC v. Super. Ct.,*
  62 Cal. App. 5th 905 (2021) ................................................................................................. 25

*Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.,*
  114 F.3d 848 (9th Cir. 1997) ....................................................................................... 3, 10, 12

*Owens v. Kaiser Found. Health Plan, Inc.,*
  244 F.3d 708 (9th Cir. 2001) ................................................................................................ 11

*Picot v. Weston,*
  780 F.3d 1206 (9th Cir. 2015) .............................................................................................. 20

*Piper v. Cabillo,*
  2014 WL 12631475 (N.D. Cal. Sept. 2, 2014) ..................................................................... 25

*Ranza v. Nike, Inc.,*
  793 F.3d 1059 (9th Cir. 2015) .............................................................................................. 19

*Rush v. Savchuk,*
  444 U.S. 320 (1980) .............................................................................................................. 22

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ...................................................................................... 4, 18, 20

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
  549 U.S. 422 (2007) .............................................................................................................. 13

*Skanda Grp. of Indus., LLC v. Cap. Health Partner, LLC,*
  2020 WL 7630687 (C.D. Cal. Dec. 21, 2020)...................................................................... 21

*Stavrinides v. Vin Di Bona,*
  2018 WL 317821 (N.D. Cal. Jan. 8, 2018) .......................................................................... 15

*Stewart v. U.S. Bancorp,*
  297 F.3d 953 (9th Cir. 2002)................................................................................................. 11

6415780

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................................................... 8

*Town of N. Bonneville v. Callaway*,
    10 F.3d 1505 (9th Cir. 1993) ................................................................................................. 8

*Vawter v. Bank of Am. NA*,
    108 F. Supp. 3d 719 (D. Ariz. 2015) ................................................................................... 11

*Vigil v. Walt Disney Co.*,
    2003 WL 22016805 (N.D. Cal. July 31, 2003) ................................................................... 13

*Walden v. Fiore*,
    571 U.S. 277 (2014) ............................................................................................................ 22

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018) .............................................................................. 15, 16, 17

Statutes

Cal. Civ. Code § 1780(a)-(b) ................................................................................................... 4, 25

Cal. Civ. Code § 1798.84(b) ..................................................................................................... 4, 25

Rules

Federal Rule of Civil Procedure 11 ............................................................................................. 13

Federal Rule of Civil Procedure 12(b)(2) ................................................................................. 1, 5

Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 1, 5, 25

SHOPIFY DEFENDANTS' MOTION TO DISMISS
Case No. 4:23-cv-02687-DMR

6415780

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 13, 2023, at 1:00 p.m., as soon thereafter that counsel may be heard, Defendants Shopify Inc. and Shopify (USA) Inc. (collectively, "Shopify Defendants") will and hereby do move this Court in Courtroom 4 of the United States District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California, 94612.

The Shopify Defendants move to dismiss with prejudice MCS's claims against the Shopify Defendants in its Complaint on the following bases:

(1) issue preclusion pursuant to a May 18, 2022, order by Judge David O. Carter dismissing with prejudice MCS's claims against the Shopify Defendants in a nearly identical case styled *My Choice Software, LLC v. TaskUs, Inc.*, No. 8:22-cv-01710-DOC-DFM (C.D. Cal.);

(2) forum non conveniens due to a written forum selection clause in the parties' contract that requires that all related disputes be brought in Ontario, Canada;

(3) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and

(4) failure to plead sufficient statutory standing for the Sixth and Eighth Causes of Action in the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice filed concurrently herewith, the Declaration of Allison L. Libeu ("Libeu Decl.") and the exhibits attached thereto, the Declaration of Erin McIntomny ("McIntomny Decl.") and the exhibits attached thereto, the Declaration of Sarah Harris-John ("Harris-John Decl."), the Declaration of Eliot N. Kolers ("Kolers Decl.") and the exhibits attached thereto, the complete files and records in this action, oral argument of counsel, and any matter that may be submitted at the hearing.

6415780

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On the same day in two different fora, Plaintiff My Choice Software, LLC ("MCS") filed two nearly identical lawsuits against Defendants Shopify Inc. and Shopify (USA) Inc. ("Shopify USA," and together, the "Shopify Defendants"). Both are based on the exact same set of alleged facts, assert overlapping claims, and seek recompense for the same alleged harms. A federal judge in MCS's other case already dismissed *with prejudice* its claims against the Shopify Defendants, noting that MCS's decision to file two "substantially identical" cases reeked of "gamesmanship" and that resolution of one case should necessarily resolve the other. *See My Choice Software, LLC v. TaskUs, Inc.*, No. 8:22-cv-01710-DOC-DFM (C.D. Cal.) (Carter, J.) ("Central District Case"). Despite this, and despite opportunities the Shopify Defendants provided MCS to withdraw its second attempted bite at the apple, MCS continues to prosecute this case, inexplicably wasting the Court's and parties' time and resources. The Shopify Defendants respectfully urge the Court to dismiss MCS's claims with prejudice and issue an order to show cause as to why MCS should not be sanctioned for its actions and continuing conduct.

MCS is a merchant that has contracted with Shopify Inc. since 2015 to provide its online storefront. In 2020, rogue criminals—outsiders conspiring with contractors of Defendant TaskUs, Inc. ("TaskUs"), which provided services to non-party Shopify International Limited—surreptitiously stole customer information from TaskUs and Shopify Inc. in the Philippines, including information relating to certain MCS customers. No one disputes that MCS and Shopify Inc. were both victims of those crimes. As soon as Shopify Inc. became aware of the data theft, it promptly notified merchants, including MCS, and began investigating the scope and impact on affected persons. In April 2021, the federal government indicted one of the bad actors for his criminal conduct, and he ultimately pleaded guilty to conspiracy to commit wire fraud.

On September 16, 2022, MCS filed two nearly identical lawsuits relating to this data theft in separate California courts. It is unnecessary for this Court to delve into all the fatal deficiencies in

6415780

MCS's complaint here (of which there are many).[1] Instead, the Court need only address four dispositive issues, each of which compels dismissal of MCS's claims against the Shopify Defendants.

*First*, dismissal of MCS's claims in the Central District Case compels dismissal of MCS's Complaint based on issue preclusion. In the Central District Case, the Shopify Defendants moved to dismiss on the basis that, among other things, MCS's contract with Shopify Inc.—called the "Plus Agreement"—contains a forum selection clause that requires that all disputes be brought in Ontario, Canada. MCS opposed, arguing that the forum selection clause is unenforceable. Judge David O. Carter granted the Shopify Defendants' motion to dismiss *with prejudice*. Judge Carter held that the forum selection clause applies to MCS's claims about the 2020 data theft, finding "no extraordinary circumstances that warrant overcoming this forum selection clause." This case and the Central District Case involve the same relevant parties: MCS, Shopify Inc., and Shopify USA. They also involve the same issue: whether the forum selection clause in the parties' contract that requires MCS's claims regarding the 2020 data theft be brought in Ontario, Canada. Because Judge Carter already ruled on this issue, MCS "is precluded from relitigating the applicability, and enforceability, of the forum selection clause." *Offshore Sportswear, Inc. v. Vuarnet Int'l, B.V.*, 114 F.3d 848, 851 (9th Cir. 1997). The Court should thus dismiss MCS's claims against the Shopify Defendants based on issue preclusion.

*Second*, even if issue preclusion did not apply, the Court should nevertheless dismiss MCS's claims based on the forum selection clause in the contract between MCS and Shopify Inc. ( (McIntomny Decl., Ex. A.) In the Plus Agreement, the parties ███████████████████████████ ████████████████████████████████████████████████ Canada to resolve their disputes. (*Id.* § 9.3.) As the Supreme Court instructs, forum selection clauses like the clause here "should control except in *unusual* cases," "*extraordinary* circumstances," and where "public-interest factors *overwhelmingly* disfavor a transfer." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.*

---

[1] In its rush to initiate legal action, MCS filed a complaint in this case that is rife with legal and factual errors, including nonsensical allegations about a non-party clothing manufacturer (Compl. ¶¶ 1, 6, 23-25 (allegations relating to "IABMFG")) and services that no defendant provides (*id.* ¶¶ 81, 85, 90, 94, 156 (allegations relating to "title insurance, a home warranty, or other real estate closing services")).

*Dist. of Tex.*, 571 U.S. 49, 66–67 (2013) ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. . . . In all but the *most unusual* cases, therefore, 'the interest of justice' is served by holding parties to their bargain.") (emphases added). In its Complaint, MCS does not allege the Plus Agreement is inapplicable or unenforceable; to the contrary, MCS asserts breach of contract claims. (Compl. ¶¶ 79-92.) Yet, MCS fails to acknowledge the contractual forum selection clause. And, regardless, MCS cannot demonstrate the extraordinary circumstances required to overcome the agreed-upon forum selection clause, necessitating dismissal of its claims.

*Third*, this Court lacks personal jurisdiction over each of the Shopify Defendants. There is no general jurisdiction as neither Shopify Defendant is incorporated in or has its principal place of business in California. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413–14 (2017) (paradigm fora of general jurisdiction are "place of incorporation" and "principal place of business"); ECF 1 ¶¶ 4-6. Likewise, MCS cannot show specific jurisdiction over the Shopify Defendants. MCS fails to allege specific facts establishing that its negligence claim arises out of the Shopify Defendants' purposeful availment of the "benefits and protections" of California law. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004). Since MCS cannot meet its burden to establish a prima facie showing of personal jurisdiction, the Shopify Defendants should be dismissed.

*Fourth*, MCS does not have statutory standing to bring claims under consumer protection laws. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (plaintiff must show that it is "within the class of plaintiffs" authorized to sue to establish statutory standing). Although MCS purports to bring claims under the California Consumers Legal Remedies Act and the California Consumer Records Act, only natural persons may bring claims under those statutes. Cal. Civ. Code § 1798.84(b) (limiting standing to "customers," which is defined to be a "natural person"); Cal. Civ. Code § 1780(a)-(b) (limiting standing to a "consumer," which is defined as an "individual," not a "limited liability company" like MCS). Because MCS is a limited liability company and not a natural person, MCS cannot establish statutory standing and the Court should dismiss MCS's claims for violation of the California Consumers Legal Remedies Act and California Consumer Records Act.

6415780

1    For these reasons and those demonstrated below, the Shopify Defendants respectfully request

2    that the Court dismiss MCS's Complaint with prejudice.

3    **II.    ISSUES TO BE DECIDED**

4    Whether Plaintiff's Complaint should be dismissed with prejudice: (1) under the doctrine of

5    issue preclusion; (2) for forum non conveniens; or (3) for lack of personal jurisdiction under Fed. R.

6    Civ. P. 12(b)(2). If the Complaint is not dismissed for the preceding reasons, whether the Sixth and

7    Eighth Causes of Action in the Complaint should be dismissed with prejudice for insufficient

8    statutory standing pursuant to Fed. R. Civ. P. 12(b)(6).

9    **III.    BACKGROUND**

10    **A.    The Parties and Their Relationship**

11    Shopify Inc. provides software and infrastructure for businesses, like MCS, that allows them

12    to design, set up, and manage their own online stores. (McIntomny Decl. ¶ 3.) Merchants use Shopify

13    Inc.'s software and services to design, establish, and manage stores across multiple sales channels,

14    including the web, mobile applications, social media, and the merchant's physical locations. (*Id.*) In

15    turn, customers make purchases from merchants. (*Id.*).

16    Shopify USA provides services and support to various aspects of Shopify Inc.'s business,

17    such as a messaging application that Shopify Inc.'s merchants can use to improve their customer

18    service. (Harris-John Decl. ¶ 6.) Unlike Shopify Inc., Shopify USA does not enter into contracts or

19    business relationships for platform services with merchants, including MCS. (*Id.* ¶ 7.)

20    In 2015, MCS contacted Shopify Inc. about pursuing a business relationship, and eventually

21    transitioned its e-commerce business to Shopify Inc.'s platform. (FAC ¶ 21.) On June 1, 2017, the

22    parties entered into a new contract—the Plus Agreement. (McIntomny Decl. Ex. A.) ███

23    ███████████████████████████████████████████████

24    ███████████████████████████████████████████████

25    ███████████████████████████████████████████████

26    ███████████████████████████████████████████████

27    ███████████████████████████████████████████████

28    ███████████████████████████████████████████████

1   ████████████████████████████████████████████

2   ██████████████████████

3       In 2016, a separate entity—non-party Shopify International Limited ("Shopify

4   International")—entered into a contract for TaskUs to provide various services to Shopify

5   International. (McIntomny Decl. Ex. D.) Among other things, TaskUs agreed to provide Shopify

6   International with "[a] comprehensive customer support program through various channels,"

7   including "email, chat and phone." (*Id*. at 28.)

8       **B.    Criminal Actors Steal MCS Customer Information from TaskUs and Shopify, Inc.**

9       In 2020, conspiring TaskUs support workers in the Philippines surreptitiously used their work

10  access to steal customer information from TaskUs and Shopify Inc., including information relating

11  to MCS's customers ("2020 Data Theft"). (McIntomny Decl. ¶¶ 12-13.) Neither the Shopify

12  Defendants nor their employees were involved in any way in the theft of this customer information.

13  As soon as Shopify Inc. became aware of the data theft, it promptly notified its merchants, including

14  MCS. (Compl. ¶ 29.) And it also immediately began investigating the data theft—including the scope

15  and impact on affected persons. (*Id*. ¶¶ 29-30.)

16      On September 18, 2020, the Vice President and General Manager of Revenue at Shopify,

17  Inc., Loren Padelford, notified MCS that its online store was involved in the 2020 Data Theft. (*Id*. ¶

18  29.) Shopify Inc. explained to MCS that on July 16, 2020, unknown persons surreptitiously installed

19  a "private application" to steal information. (*Id*. ¶ 31.) Shopify Inc. continued to communicate

20  updates about the theft to MCS and its other merchants. (*Id*. ¶¶ 32-35.)

21      Shopify Inc. was shocked and appalled to learn about the theft and the criminal scheme

22  leading to it. Since it learned of the theft, Shopify Inc. has conducted its own investigation and

23  worked with all affected merchants, including MCS, to provide them with information that they could

24  use to inform any of their affected customers. And Shopify Inc. has continued to work tirelessly to

25  protect merchant information and to ensure the security and integrity of its platform.

26      **C.    The Parties Litigated the Proper Forum for MCS's Claims in the Central District Case**

27

28  On September 16, 2022, MCS filed two lawsuits relating to the 2020 Data Theft in separate

1  California courts. In this case, MCS alleges that Shopify Inc. and one of its U.S. affiliates, Shopify

2  USA, are liable for breach of contract, negligence, and other claims arising out of the data theft.

3  (Compl. ¶¶ 62-92.) In the Central District Case, MCS alleged the same breach of contract and

4  negligence claims against Shopify Inc. and Shopify USA based on the same data theft. (Libeu Decl.

5  Ex. F (MCS First Amended Complaint) ¶¶ 46-55.) In addition to the same claims, the two cases

6  assert substantially overlapping allegations and seek substantially the same relief. (Compl. ¶¶ 29, 34-

7  41, 46-55, 99-103; Libeu. Decl. Ex. F ¶¶ 39, at 19-20.)

8      MCS decided to prosecute the Central District Case first. The Shopify Defendants filed a

9  motion to dismiss based on, among other things, the forum selection clause in the parties' Plus

10  Agreement. (Libeu. Decl. Ex. G.) In opposition, MCS did not dispute that the Plus Agreement is an

11  enforceable contract; that the Plus Agreement contains a forum selection clause requiring disputes

12  be brought in Ottawa, Canada; that the forum selection clause binds MCS, Shopify Inc., and Shopify

13  USA; and that MCS's contract and tort claims arise out of and in connection with the Plus Agreement.

14  (Libeu Decl. Ex. H at 4.) Instead, MCS argued only that the forum selection clause is unenforceable

15  because it allegedly "contravenes public policy," is "fundamentally unfair to MCS," and is

16  "tantamount to a pre-trial jury waiver." (*Id.* at 4-7.)

17      Judge Carter rejected MCS's unenforceability arguments and granted the Shopify

18  Defendants' motion to dismiss based on the forum selection clause. (Libeu Decl. Ex. K at 1-2.) As

19  Judge Carter reasoned, "the Plus Agreement was negotiated between two experienced business

20  entities, Plaintiff [MCS] and the Shopify Defendants" and "[t]he parties do not genuinely dispute the

21  existence of the forum selection clause in the Plus Agreement." (*Id.* at 1.) Finding "no extraordinary

22  circumstances that warrant overcoming this forum selection clause," Judge Carter dismissed the

23  claims against the Shopify Defendants with prejudice. (*Id.* at 1-2.)

24  **IV.    ARGUMENT**

25      **A.    Issue Preclusion Bars MCS's Claims Against the Shopify Defendants**

26      MCS's claims against the Shopify Defendants fail because of the preclusive nature of Judge

27  Carter's order finding the contractual forum selection clause to be enforceable. "The preclusive effect

28  of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880,

891 (2008); *see also Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885-86 (9th Cir. 2000) (holding that federal and California preclusion elements are identical). In the Ninth Circuit, the movant must show three elements to establish issue preclusion: "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Town of N. Bonneville v. Callaway*, 10 F.3d 1505, 1508 (9th Cir. 1993) (cleaned up). All three elements are indisputable here, mandating dismissal of MCS's claims against the Shopify Defendants.

> 1.   The Court in the Central District Action Already Decided the Issue in this Case—the Enforceability and Applicability of the Forum Selection Clause

It is beyond genuine dispute that whether the forum selection clause in the Plus Agreement is enforceable and applies to MCS's claims against the Shopify Defendants is the identical issue already decided by Judge Carter.  The Ninth Circuit analyzes four key factors in determining whether issues are identical: (1) "substantial overlap between the evidence or argument to be advanced"; (2) "application of the same rule of law as that involved in the prior proceeding; (3) overlap between "pretrial preparation and discovery"' and (4) "how closely related are the claims involved in the two proceedings[.]" *Kamilche Co. v. United States*, 53 F.3d 1059, 1062 (9th Cir. 1995) (cleaned up). Each of the four factors demonstrates that the issue in this case—whether the forum selection clause in the Plus Agreement is enforceable and applies to MCS's claims against the Shopify Defendants—is the identical issue already decided by Judge Carter:

1)   There is *complete* overlap between the evidence and argument to be advanced as to the forum selection clause. In both cases, MCS admits that the parties entered into a contract governing their business relationship. (Compl. ¶ 81 ("Plaintiffs and other Class members entered into a contract with Shopify"); Libeu Decl. Ex. F ¶ 47 ("There is a valid and enforceable contract between MCS and Shopify, Inc., namely, the Shopify Plus Agreement.").) That contract is the Plus Agreement, which requires that ████████████████████████████████████ with

6415780

1    the contract be brought in Ontario, Canada. (McIntomny Decl.[2] Ex. A § 9.3.) In both cases, the

2    Shopify Defendants argue that the forum selection clause is enforceable and requires dismissal

3    of MCS's claims. (*See infra* § IV.A.2; Libeu Decl. Ex. G at 6-13 (Shopify Defendants' brief in

4    the Central District Case with the same evidence and argument).)

5    2)    The same rule of law applies in both cases. Federal law applies to the enforcement and

6    interpretation of forum selection clauses in federal court. *Manetti-Farrow, Inc. v. Gucci Am.,*

7    *Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) ("We conclude that the federal procedural issues raised

8    by forum selection clauses significantly outweigh the state interests, and the federal rule

9    announced in The Bremen controls enforcement of forum clauses in diversity cases.").

10   3)    There is no need for pretrial preparation and discovery to enforce the forum selection clause.

11   4)    The claims in the two cases are nearly identical and are based on identical underlying facts.

12   (*Compare* Compl. ¶¶ 29-37 (detailing allegations relating to the 2020 Data Theft), *with* Libeu

13   Decl. Ex. F ¶¶ 34-43 (same).) Both assert breach of contract and negligence claims against the

14   Shopify Defendants. (*Compare* Compl. ¶¶ 62-92 (negligence and breach of contract claims),

15   *with* Libeu Decl. Ex. F ¶¶ 46-55 (same).) And both seek damages arising out of the 2020 Data

16   Theft, including relating to the alleged impact on MCS's product inventory. (*Compare* Compl.

17   ¶ 29 ("The files breached included the digital software codes or 'product keys' purchased and

18   inventoried by My Choice Software, amounting to approximately $132,870,543.50."), *with*

19   Libeu Decl. Ex. F ¶ 39 ("files breached included the customer order records containing the

20   product keys purchased and inventoried by MCS to value over $100 million.").)

21        In fact, on multiple occasions, MCS already admitted that the two cases involve the same

22   issues. For example, MCS filed a Notice of Related Case representing that this case and the Central

23   District Case: "involve[] the same parties and is based on the same or similar claims"; (ii) "arises

24   from the same or substantially identical transactions, incidents, or events requiring the determination

25   of the same or substantially identical questions of law or fact"; (iii) "involves claims against, title to,

---

[2] Due to the nearly identical underlying allegations in this case and the Central District Case, the Shopify Defendants have re-used the same fact declarations from the Central District Case in support of this Motion.

6415780

possession of, or damages to the same property"; and (iv) "is likely for other reasons to require substantial duplication of judicial resources if heard by different judges." (Libeu Decl. Ex. L (MCS's Notice of Related Case) at 1.) MCS further represented that its complaint in this case and in the Central District Case "alleg[e] similar claims." (*Id.* at 2; *see also* Ex. J at 7:20-23 (MCS admitting that this case has "some of the same theories that are alleged [in the Central District Case]").) Based on this, Judge Carter found that the cases are "substantially identical." (*Id.*, Ex. K at 1 ("the parties have represented that a substantially identical state court action is proceeding in San Francisco" and finding "that resolution of that San Francisco action would also resolve the instant case.")).

Although MCS alleges causes of action against the Shopify Defendants in this case that it did not allege in the Central District Case (Compl. ¶¶ 93-177 (detailing additional claims)), those are still indisputably *related*, which is all the analysis requires. Each of those causes of action are based on the Shopify Defendants' alleged failures to prevent the 2020 Data Theft, the *same* asserted bases for its claims in the Central District Case. (*E.g.*, Compl. ¶ 100 ("Shopify breached its implied contracts with Plaintiff and the other Class Members to safeguard and protect their PII"), *id.* ¶ 108 ("Defendants' failure to prevent, detect, and stop the Data Breach from occurring").) Where, as here, a plaintiff adds new claims in a second case that are based on substantially the same factual basis as its claims in the first case, courts hold that the issues between the cases are sufficiently identical for the preclusion analysis. *Offshore Sportswear*, 114 F.3d at 850 (affirming preclusion where plaintiff asserted new claim of "fraudulent inducement" in second case but based on the same facts as "claim for relief for fraud in the prior federal complaint"); *Monterey Plaza Hotel Ltd. P'ship v. Loc. 483 of Hotel Emps. & Rest. Emps. Union, AFL-CIO*, 215 F.3d 923, 927-28 (9th Cir. 2000) (affirming dismissal based on res judicata even though first case involved defamation claim and second case involved a RICO claim because both sought recovery for "the same overall harms").

There can be no genuine dispute that the specific issue here—whether the contractual forum selection clause is enforceable and requires MCS's claims regarding the 2020 Data Theft be brought in Ontario, Canada—is the *same* issue that was presented to and decided by Judge Carter in the Central District Case.

2.     <u>MCS and the Shopify Defendants Actually Litigated the Enforceability and Applicability of the Forum Selection Clause</u>

MCS and the Shopify Defendants actually litigated the enforceability and applicability of the forum selection clause in the Central District Action. Shopify Inc. and Shopify USA moved to dismiss MCS's claims for forum non conveniens based on the forum selection clause in the Plus Agreement. (Libeu Decl. Ex. G (Shopify Defendants' motion to dismiss in the Central District Case).) MCS opposed the Shopify Defendants' motion, arguing that the forum selection is unenforceable. (Libeu Decl. Ex. H (MCS opposition to Shopify Defendants' motion to dismiss); *supra* § III.C.) The Shopify Defendants then filed a reply brief in support of its forum selection clause argument in the motion to dismiss. (Libeu Decl. Ex. I (reply brief).) The Court discussed issues relating to the motion to dismiss during hearings on May 1 and May 16, 2023. (*Id.*, Ex. K at 1.)

After this fulsome briefing by the parties and oral argument, Judge Carter found the forum selection clause in the Plus Agreement to be enforceable and dismissed Shopify Inc. and Shopify USA with prejudice from the Central District Case. (Libeu Decl. Ex. K at 2 ("Accordingly, the Court **GRANTS** Shopify Defendants' Motion to Dismiss [] and **DISMISSES WITH PREJUDICE** this action against the Shopify Defendants.").) Under controlling Ninth Circuit precedent, Judge Carter's order is a final judgment with preclusive effect for at least two, independent reasons.

*First*, Judge Carter dismissed MCS's claims against Shopify Inc. and Shopify USA *with prejudice*. This dismissal "with prejudice" is necessarily a final judgment with preclusive effect. Under Ninth Circuit law, "[t]he phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). Courts thus routinely use dismissals with prejudice to bar the re-litigation of the same issues in later-filed cases. *See, e.g.*, *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (affirming dismissal based on res judicata "because the prior action was dismissed with prejudice"); *Vawter v. Bank of Am. NA*, 108 F. Supp. 3d 719, 724 (D. Ariz. 2015) ("A dismissal with prejudice entered pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a 'judgment on the merits' to which the doctrine of claim preclusion applies."); *In re Koebel*, 2014 WL 1654342, at *3 (Bankr. C.D. Cal. Apr. 25, 2014) ("For claim preclusion purposes, a dismissal with

1  prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action."

2  (cleaned up)).

3       *Second*, irrespective of a "with prejudice" dismissal, the Ninth Circuit has held that a

4  dismissal based on a forum selection clause has preclusive effect in related actions between the same

5  parties. In *Offshore Sportswear*, for example, the plaintiff argued that a prior dismissal due to an

6  enforceable forum selection clause was "not an adjudication on the merits[.]" 114 F.3d at 850. The

7  Ninth Circuit rejected that argument, holding that dismissal based on a forum selection clause "is a

8  determination on the merits of the applicability, and enforceability, of the clause itself." *Id.* at 851.

9  The dismissal is "is preclusive when the issues and the parties remain the same." *Id.*

10      This case mirrors *Offshore Sportswear*. Judge Carter dismissed MCS's claims due to "the

11  existence of the forum selection clause in the Plus Agreement." (Libeu Decl. Ex. K at 1.) He held,

12  over MCS's objections, that the forum selection is enforceable and that it applied to MCS's claims.

13  (*Id.*) Since the issues and parties in this case are the same as the Central District Case (*see supra*

14  III.C), Judge Carter's dismissal precludes MCS's claims here. *Offshore Sportswear*, 114 F.3d at 851

15  (affirming dismissal because "[plaintiff] is precluded from relitigating the applicability, and

16  enforceability, of the forum selection clause").

17             3.      The Forum Selection Clause Was Critical and Necessary to Dismissal in the

18                     Central District Case

19      As with the first two elements, there can be no dispute about the final element of issue

20  preclusion: that "the determination of the issue in the prior litigation must have been a critical and

21  necessary part of the judgment in the earlier action." *Offshore Sportswear*, 114 F.3d at 850 (cleaned

22  up). Judge Carter's order dismissed Shopify Inc. and Shopify USA for a single reason: due to "the

23  forum selection clause in the Plus Agreement." (Libeu Decl. Ex. K at 1.) *Offshore Sportswear*, 114

24  F.3d at 851 (affirming preclusion where forum selection clause "is the issue that was critical to

25  dismissal of the original action"). Accordingly, Judge Carter's ruling that the forum selection clause

26  is enforceable and applies to MCS's claims binds MCS here.

27                                              ***

28      MCS and the Shopify Defendants already litigated the applicability and enforceability of the

- 12 -

6415780

forum selection clause in the Plus Agreement to MCS's claims relating to the 2020 Data Theft. After reviewing the parties' briefing, Judge Carter found the forum selection clause to be enforceable and dismissed the Shopify Defendants with prejudice. This Court need not repeat Judge Carter's analysis—it should instead dismiss MCS's claim in this case based on the preclusive effect of the dismissal in the Central District Case. If it does, it need not reach any further issues presented in this Motion. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("judicial economy" best served where court can dismiss based on forum selection clause without reaching other jurisdictional issues, including personal jurisdiction).

Additionally, due to the clear preclusive effect of Judge Carter's order, the Court should issue an order to show cause for why MCS and its attorneys should not be sanctioned for their unexplained refusal to dismiss claims against the Shopify Defendants in this case. *See, e.g.*, *Vigil v. Walt Disney Co.*, 2003 WL 22016805, at *6 (N.D. Cal. July 31, 2003) (ordering plaintiff to "show cause [for] why he should not be sanctioned" for "proceeding to relitigate claims already decided" and noting "[s]anctions may be imposed against a party and its attorneys pursuant to Federal Rule of Civil Procedure 11 on the court's own initiative").

## B. MCS Agreed to a Forum Selection Clause Mandating that All Disputes Be Heard in Ontario Canada

Even if issue preclusion did not apply, the Court should dismiss Shopify Inc. and Shopify USA due to the enforceable forum selection clause in the Plus Agreement.

Dismissal is appropriate on forum non conveniens grounds when there is a forum selection clause mandating that the claims be litigated in another forum. *See Atl. Marine*, 571 U.S. at 60-62 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens."). Here, MCS and Shopify Inc. agreed to litigate all disputes relating to their business relationship in Ontario, Canada. Accordingly, the Court should dismiss all of MCS's claims against the Shopify Defendants as they are not properly brought in California.

### 1. The Forum Selection Clause Applies to the Claims Against the Shopify Defendants

In determining whether to dismiss a case in favor of a different forum, "the Court must first

- 13 -

6415780

determine whether a valid forum-selection clause exists within the [parties'] contract." *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014). "Determining this contractual issue is a two-part inquiry: (1) if the parties agreed to the clause; and (2) if the clause applies to the issue in dispute." *Id.*; *Manetti-Farrow*, 858 F.2d at 513–15 (affirming dismissal after finding that the parties agreed to a forum selection clause that applied to the dispute). Both parts of the inquiry are satisfied in this case.

**First**, MCS and Shopify Inc. agreed to a forum selection clause in the Plus Agreement. The Plus Agreement unquestionably governs the commercial relationship between MCS and the Shopify Defendants. (McIntomny Decl. Ex. A § 2.1 ██████████████████████████ ████████████████████████████████████████ Section 9.3 of the contract contains a forum selection clause: ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████ (*Id.* § 9.3.) The forum selection clause is "prima facie valid" and enforceable. *Manetti-Farrow*, 858 F.2d at 514–15.

Although not a signatory to the Plus Agreement, Shopify USA can also enforce the forum selection clause. "In the Ninth Circuit, 'where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clause.'" *McNally v. Kingdom Tr. Co.*, 2020 WL 7786539, at *2 (C.D. Cal. Nov. 13, 2020) (cleaned up); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *49–52 (N.D. Cal. Aug. 30, 2017) (non-party can enforce forum selection clause where negligence claim related to contract).

Shopify USA is a wholly-owned subsidiary of Shopify Inc. (McIntomny Decl. ¶ 6.) MCS alleges that Shopify USA is liable for the same reasons as Shopify Inc.—even grouping them together as "Shopify" or "Defendants" for all of its claims. (Compl. ¶¶ 64-177.) According to its terms, the Plus Agreement governs MCS's commercial relationship for all Shopify Services. (McIntomny Decl. Ex. A § 3.1.) The non-signatory Shopify Inc. subsidiary can thus enforce the contract's forum selection clause. *See, e.g., Manetti-Farrow*, 858 F.2d at 514 n.5 ("forum selection clause applies to all defendants" even though only one defendant signed the contract because "the alleged conduct of

the non-parties is so closely related to the contractual relationship"); *Stavrinides v. Vin Di Bona*, 2018 WL 317821, at *3-4 (N.D. Cal. Jan. 8, 2018) (holding that party was "bound by the forum selection clause" even though he "was not party to the contracts nor their terms" because "the alleged conduct of the non-parties is so closely related to the contractual relationship" (cleaned up)).

*Second*, the forum selection clause in the Plus Agreement applies to MCS's claims. MCS's breach of contract claim alleges "Plaintiffs and the other Class members entered into a contract [or the Plus Agreement] with Shopify"[3] which included "Shopify's Privacy Policy [which] is an agreement between Shopify and individuals who provided their PII to Shopify." (Compl. ¶¶ 81-83.) MCS further alleges that "Shopify's Privacy Policy 'governs [Shopify's] use of the information [customers] provide us,'" and applies to MCS's claims against the Shopify Defendants. (*Id*. ¶ 84.) The Ninth Circuit routinely affirms dismissal of breach of contract claims to ensure that the claim is litigated in the agreed-upon forum in the contract. *See, e.g., Finsa Portafolios, S.A. DE C.V. v. OpenGate Cap., LLC*, 769 F. App'x 429, 431–32 (9th Cir. 2019) (affirming dismissal of breach of contract claim based on forum non conveniens and forum selection clause); *Adema Techs., Inc. v. Wacker Chem. Corp*., 657 F. App'x 661, 663–64 (9th Cir. 2016) (same).

The forum selection clause likewise applies to MCS's tort claims. It is black-letter law that "forum selection clauses can be equally applicable to contractual and tort causes of action." *Manetti-Farrow*, 858 F.2d at 514. Where a forum selection clause covers any claim "in connection with," or "relating to" the contract, the clause "appl[ies] to any disputes that reference the agreement or have some 'logical or causal connection' to the agreement." *Yei A. Sun v. Advanced China Healthcare, Inc*., 901 F.3d 1081, 1086 (9th Cir. 2018). "The dispute need not grow out of the contract or require interpretation of the contract in order to relate to the contract." *Id*. at 1086.

Here, the scope of the Plus Agreement and the forum selection clause are broad. As noted above, the Plus Agreement governs all services Shopify Inc. provides to MCS. (McIntomny Decl. Ex. A § 3.1.) The forum selection clause covers all claims █████████████████ with the

---

[3] MCS's complaint states this contract was "for the provision of title insurance, a home warranty, or other closing services." (Compl. ¶ 81.) This is plainly wrong, and the Shopify Defendants presume such language was included unintentionally.

6415780

contract. (*Id.* § 9.3.) The clause applies to all of MCS's claims because there is a "logical or causal connection" between the claims and the contract. *Yei A. Sun*, 901 F.3d at 1086.

All of MCS's claims reference "Shopify" or "Defendants" and their collection of MCS and putative class members' personal identifiable information.[4] (Compl. ¶¶ 64, 95, 104, 116, 142, 154, 169.) But MCS also admits that any duties Shopify Inc. (and thus, its "functional equivalents") owes are outlined in the Plus Agreement. (*Id.* ¶¶ 81-83.) MCS agreed that it ███████████████

███████████████████████████████████████████████

███████████████████████████████████ (McIntomny

Decl. Ex. A § 3.1 (emphasis added).) And the parties agreed that ████████████████

███████████████████████████████████████████████

██████████████████████████ (*Id.* Ex. B § 21.) The duties that MCS claims the Shopify Defendants owe are thus detailed in and circumscribed by the Plus Agreement, including the policies incorporated therein.

Where, as here, a parties' contract contains provisions that relate to or could affect the plaintiff's tort claim, courts routinely enforce the forum selection clauses in those contracts. *See, e.g., Yei A. Sun*, 901 F.3d at 1086–87 (affirming enforcement of forum selection clause in a share purchase agreement where plaintiff alleged that defendant was liable for a tort as a "seller of securities"); *Color Switch LLC v. Fortafy Games DMCC*, 818 F. App'x 694, 696 (9th Cir. 2020) (holding that tort claim fell "within the scope of the forum selection clause" because "[a] court would have to interpret [] ownership rights under the agreement to resolve [dispute]"). In sum, the Plus Agreement requires that MCS's claims must be brought, if at all, in Ontario, Canada.

> 2.  MCS Cannot Show the Extraordinary Circumstances Required to Overcome Application of the Forum Selection Clause

Once the district court finds a forum selection clause in the parties' contract, "the plaintiff 'must bear the burden of showing why the court should not transfer the case to the forum to which

---

[4] To be clear, MCS does not assert any facts supporting its conclusory assertion that its or its customers' "personal identifiable information" was stolen. The only specific facts MCS alleges about harm relate to alleged stolen product keys, which of course would not apply to any other non-software licensing business or consumer. (Compl. ¶ 29.)

the parties agreed.'" *Yei A. Sun*, 901 F.3d at 1087 (quoting *Alt. Marine*, 571 U.S. at 64). Importantly, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. For that reason, the plaintiff cannot prevail by pointing to any private factors to defeat application of the forum selection clause. *Yei A. Sun*, 901 F.3d at 1087–88 ("[A] court must deem all factors relating to the private interests of the parties . . . entirely in favor of the preselected forum." (cleaned up)). Instead, the plaintiff must show that "public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. "In short, 'only under ***extraordinary circumstances*** unrelated to the convenience of the parties' should a motion to enforce a forum-selection clause be denied." *Yei A. Sun*, 901 F.3d at 1088 (quoting *Alt. Marine*, 571 U.S. at 62) (emphasis added). "The practical result is that a forum-selection clause 'should control except in unusual cases.'" *Id*. (quoting *Alt. Marine*, 571 U.S. at 64).

Under Ninth Circuit precedent, "a forum-selection clause [is] controlling unless the plaintiff made a strong showing" on one of three factors: "(1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" *Id*. (quoting *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972)).

MCS cannot show extraordinary circumstances to overcome the forum selection clause. There is no allegation or evidence in the Complaint that the forum selection clause is invalid, that enforcement would contravene a strong public policy of California, or that trial in the contractual forum—Ontario, Canada—would be gravely difficult and inconvenient.

Moreover, it is beyond reasonable dispute that Ontario, Canada is an adequate forum. Among other things, Ontario law recognizes negligence and breach of contract causes of actions. (Kolers Decl. ¶¶ 7–9).) And putting aside the merits of MCS's claims, there is no Ontario statute or common law doctrine that would preclude MCS from having brought this case in Ontario. (*Id*. ¶ 11.) Indeed, courts routinely dismiss actions in favor of forum selection clauses mandating that disputes be

brought in Canada. *See, e.g., Juniper Networks, Inc. v. Andrade*, 2021 WL 3514103, at *4 (N.D. Cal. Aug. 10, 2021) (dismissing claims due to forum selection clause requiring disputes be brought in Ontario, Canada and holding that "[s]everal district courts within the Ninth Circuit have found that the Canadian judicial system provides an adequate alternative forum"); *Modius, Inc. v. Psinaptic, Inc.*, 2006 WL 1156390, at *7-8 (N.D. Cal. May 2, 2006) (dismissing claims due to forum selection clause requiring claims be brought "before the Court of Queen's Bench, City of Calgary, Alberta, Canada")

Since the forum selection clause mandates that disputes be brought in Canada and MCS cannot meet its burden to show extraordinary circumstances to set aside the parties' chosen forum, the Court should dismiss MCS's claims.

**C.      This Court Does Not Have Personal Jurisdiction Over the Shopify Defendants**

"[T]he plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Id.* at 1016. MCS appears to allege both, but it cannot make a prima facie case to establish either for either of the Shopify Defendants.

1.      There is No General Jurisdiction Over the Shopify Defendants

"The 'paradigm' forums in which a corporate defendant is 'at home,' [] are the corporation's place of incorporation and its principal place of business." *BNSF*, 581 U.S. at 413. Only in an "exceptional case" may "a corporate defendant's operations in another forum [] be so substantial and of such a nature as to render the corporation at home in that State." *Id.* (cleaned up). "This is an exacting standard" that requires sufficient contacts to "'approximate physical presence' in the forum state." *Schwarzenegger*, 374 F.3d at 801 (cleaned up).

The Shopify Defendants are not "at home" in California. Shopify Inc. is incorporated in Canada. (McIntomny Decl. ¶ 2.) Shopify USA is incorporated in Delaware. (Harris-John Decl. ¶ 2.) Neither has a principal place of business in California. (McIntomny Decl. ¶ 2; Harris-John Decl. ¶ 3.)

In the Complaint, MCS alleges that "Shopify regularly conducts and/or solicits business in,

1  engages in other persistent courses of conduct in, and/or derives substantial revenue from products

2  provided to persons in the State of California" and "has engaged, and continues to engage, in

3  substantial and continuous business practices in the State of California." (Compl. ¶ 17.) MCS's lone

4  allegation supporting this conclusion is Shopify Inc. and Shopify USA have "a domestic office in

5  San Francisco, California." (*Id.* ¶¶ 10-11.) But even treated as true, this allegation is insufficient, as

6  a brick-and-mortar location is not "so continuous and systemic" as to render the Shopify Defendants

7  "essentially at home in California." *Garcia v. NutriBullet, L.L.C.*, 2022 WL 3574699, at *2 (C.D.

8  Cal. July 14, 2022) (no general jurisdiction where defendant maintained brick and mortar stores and

9  fulfillment centers in California) (emphasis in original); *LaGuardia v. Designer Brands, Inc.*, 2020

10 WL 2463385, at *4 (S.D. Cal. May 7, 2020) (no general jurisdiction even with 48 brick and mortar

11 locations in California). And the Supreme Court has squarely "refused to approve the exercise of

12 general jurisdiction in every State in which a corporation engages in a substantial, continuous, and

13 systematic course of business." *HID Glob. Corp. v. Isonas, Inc.*, 2014 WL 10988340, at *3 (C.D.

14 Cal. Apr. 21, 2014) (cleaned up) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014)).

15 Accordingly, MCS's allegations are deficient as a matter of law.

16         The reality is that MCS cannot plead sufficient systematic contacts to approximate physical

17 presence in California for any of the Shopify Defendants:

18  • Shopify Inc. is not registered to do business in California, does not have a registered agent

19     for service of process in California, does not have an office in California, and has no

20     employees in California. (McIntomny Decl. ¶ 4.) *Best Odds Corp. v. iBus Media Ltd.*, 655 F.

21     App'x 582, 583 (9th Cir. 2016) (no general jurisdiction on similar facts); *Mehr v. Fed'n*

22     *Internationale de Football Ass'n*, 115 F. Supp. 3d 1035, 1054 (N.D. Cal. 2015) (same).

23  • Shopify USA's principal address is currently in New York and its senior-most executive

24     primarily conducts his work for Shopify USA from New York. (Harris-John Decl. ¶ 3.) Prior

25     to December 22, 2020, Shopify USA's officers were located in Canada. (*Id.* ¶ 4.) *Ranza v.*

26     *Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (district court must focus on where

27     corporation has "extensive contacts," not simply where it conducts "business activity").

28  In sum, MCS failed to meet its burden to plead sufficient facts to show a prima facie basis

for general jurisdiction over the Shopify Defendants.

### 2.  There Is No Specific Jurisdiction Over the Shopify Defendants

As for specific jurisdiction, MCS must show "minimum contacts" with California. *Schwarzenegger*, 374 F.3d at 801–02. The Ninth Circuit employs "a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. *Id.*

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (internal citations omitted). Here, MCS has not satisfied either of the first two prongs, and exercising jurisdiction over the Shopify Defendants would be unreasonable.

*First*, MCS cannot establish purposeful availment. The Ninth Circuit applies the purposeful availment framework, rather than an "effects" test or purposeful direction, when addressing contract and tort claims like MCS's claims here. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F. 3d 450, 460 (9th Cir. 2007) ("effects" test "applies only to intentional torts, not to the breach of contract and negligence claims presented here"). To establish purposeful availment, MCS must show that each Shopify Defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015); *see also Schwarzennegger*, 374 F.3d at 802 (purposeful availment consists of actions that invoke the "benefits and protections" of the laws of the forum).

MCS broadly alleges that "[t]he injuries, damages and/or harm upon which this action is based occurred or arose out of activities engaged in by Shopify within, affecting, and emanating from the State of California." (Complaint ¶ 17.) But what activities, the Complaint does not even attempt

- 20 -

1  to say. This is nothing more than a conclusory allegation devoid of any detail that cannot establish

2  personal jurisdiction. *See Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv.,*

3  *Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) ("nonspecific conclusory statement is not enough to show []

4  minimum contacts").

5      Further, MCS cannot establish purposeful availment by pointing to Shopify Inc.'s alleged

6  business with MCS. As the Supreme Court has held, simply entering into a contract with a California

7  company does not establish minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–

8  79 (1985) ("[A] contract is ordinarily but an intermediate step serving to tie up prior business

9  negotiations with future consequences which themselves are the real object of the business

10 transaction." (cleaned up)). *Boschetto*, 539 F.3d at 1017 ("[W]e are guided by the Supreme Court's

11 admonition that the formation of a contract with a nonresident defendant is not, standing alone,

12 sufficient to create jurisdiction."). Instead, other "factors—prior negotiations and contemplated

13 future consequences, along with the terms of the contract and the parties' actual course of dealing—

14 [] must be evaluated in determining whether the defendant purposefully established minimum

15 contacts within the forum." *Burger King*, 471 U.S. at 479.

16     Here, the agreed terms of the Plus Agreement defeat any claim that Shopify Inc. established

17 minimum contacts with California. Despite entering into a contract with a California company,

18 Shopify Inc. agreed with MCS to ████████████ over all disputes elsewhere, in Ontario,

19 Canada. (McIntomny Decl. Ex. A § 9.3.) And the parties further agreed that the Plus Agreement

20 would be ████████████████████████████████████████████

21 ████████████████ not California law. (*Id.*) The Plus Agreement thus proves that Shopify Inc.

22 deliberately did not purposefully avail itself of the protections and benefits of California. *Skanda*

23 *Grp. of Indus., LLC v. Cap. Health Partner, LLC*, 2020 WL 7630687, at *5 (C.D. Cal. Dec. 21, 2020)

24 (no purposeful availment where contract "does not include a California choice of law provision").

25 To the contrary, it agreed with MCS that the parties should instead enjoy the benefits of a Canadian

26 forum and Canadian law. *See, e.g., Levine Leichtman Cap. Partners III v. Shaker Constr. Grp.*, 2008

27 WL 11336663, at *4 (C.D. Cal. May 2, 2008) ("The choice of law clauses in the contracts provide

28 further reason to find that purposeful availment [in California] has not been satisfied . . . [because

1   the] various contracts were governed by either Mississippi or New York choice of law clauses.").

2       Shopify USA has likewise not purposefully availed itself of the protections of the California

3   forum. Shopify USA provides services to Shopify Inc., a Canadian company—it does not itself

4   directly provide services to MCS in California or elsewhere. (Harris-John Decl. ¶¶ 6-7.) Courts

5   decline to find specific jurisdiction under such circumstances. *See Caces-Tiamson v. Equifax*, 2020

6   WL 1322889, at *3 (N.D. Cal. Mar. 20, 2020) ("[Plaintiff] cannot establish even a prima facie case

7   of specific jurisdiction because . . . any and all actions which [defendant] did or allegedly did not

8   take with respect to its data security systems would presumably have occurred in Georgia, where

9   [defendant] has its principal place of business." (cleaned up)).

10      *Second*, MCS's claims also do not "arise out of" the Shopify Defendants' California

11  activities. To meet this element, a defendant's relationship with the forum must "arise out of contacts

12  that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014)

13  (emphasis in original). As an initial matter, MCS fails to assert any *specific* allegations against each

14  of Shopify Inc. and Shopify USA, which is plainly deficient under Supreme Court precedent. *See*

15  *Rush v. Savchuk*, 444 U.S. 320, 331-33 (1980) (reversing finding of personal jurisdiction where

16  district court "consider[ed] the 'defending parties' together and aggregat[ed] their forum contacts in

17  determining whether it had jurisdiction").

18      Instead, MCS alleges generally that the Shopify Defendants "breached their duty to exercise

19  reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PII" and

20  "failed to perform its obligations under the contract, including failing to provide adequate privacy,

21  security, and confidentiality safeguards for Plaintiff's and the other Class Members' information and

22  documents." (Compl. ¶¶ 70, 89.) But there is no allegation that the Shopify Defendants breached

23  their duties, failed to perform, or committed any other act that allegedly caused MCS harm *in*

24  *California*. And there is similarly no allegation or evidence that the Shopify Defendants' relationship

25  with TaskUs, a Delaware and Texas citizen (*id*. ¶ 13), has any connection *to California*. Since the

26  alleged violation relates to activities outside of California, MCS cannot establish specific jurisdiction

27  by pointing to alleged activities in California that are unrelated to MCS's claims. *See, e.g., Caces-*

28  *Tiamson*, 2020 WL 1322889, at *4 (no personal jurisdiction because "there is nothing to indicate that

1    [] failure to respond . . . occurred in California, rather than Georgia").

2       *Third*, exercising personal jurisdiction over the Shopify Defendants would offend due

3    process. The Ninth Circuit instructs district courts to examine seven factors in determining whether

4    exercising specific personal jurisdiction over non-resident defendants is reasonable. *Amoco Egypt*

5    *Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851–52 (9th Cir. 1993) (listing factors). The seven factors

6    present a compelling case that exercising jurisdiction would be unreasonable.

7       (i) <u>Extent of Purposeful Interjection.</u> As discussed above, none of the Shopify Defendants'

8    alleged infractions arise out of California-related activity. Because the only contact alleged here—

9    Shopify Inc.'s contract with MCS— is "attenuated" to the location of asserted negligent acts, this

10   factor "weighs in [the Shopify Defendants'] favor." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d

11   1482, 1488 (9th Cir. 1993).

12      (ii) <u>Burden on Defendant.</u> None of the Shopify Defendants are incorporated in or based out

13   of California (*see supra* § IV.C.1), and so witnesses and evidence are likely to be located outside

14   California. *Amoco*, 1 F.3d at 852 (factor favors defendant where "[p]otential witnesses and evidence

15   are not located in [the forum]"). Plus, Shopify Inc.—the entity with whom MCS contracted—is a

16   Canadian corporation. (*See supra* § IV.C.1.) "The unique burdens placed upon one who must defend

17   oneself in a foreign legal system should have significant weight in assessing the reasonableness of

18   stretching the long arm of personal jurisdiction over national borders." *Amoco*, 1 F.3d at 852 (quoting

19   *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 107 (1987)). This factor

20   weighs in favor of the Shopify Defendants.

21      (iii) <u>Conflict with the Sovereignty of Defendant's State.</u> "Where, as here, [Shopify Inc.] is

22   from a foreign nation rather than another state, the sovereignty barrier is high and undermines the

23   reasonableness of personal jurisdiction." *Amoco*, 1 F.3d at 852. This factor thus also weighs in the

24   Shopify Defendants' favor.

25      (iv) <u>Forum State's Interest.</u> California has no greater interest in this case than Canada (where

26   Shopify Inc. is based and incorporated, and where the parties agreed to resolve their dispute);

27   Delaware (where Shopify USA is incorporated); and New York (principal place of business for

28   Shopify USA). (*See supra* § IV.C.1.) This factor is, at best for MCS, neutral.

6415780

(v) <u>Most Efficient Resolution.</u> There is no basis to conclude that California is a better forum to achieve an efficient resolution than Canada, Delaware, or New York. This factor is also neutral.

(vi) <u>Convenient and Effective Relief for Plaintiff.</u> MCS agreed to a choice of law provision in the Plus Agreement that requires that the ███████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████ (McIntomny Decl. Ex. A § 9.3.) Since this case will involve applying Canadian law to interpret the parties' duties under and representations in the Plus Agreement, it will be more effective for MCS to litigate its claims in Canada with Canadian attorneys skilled in Canadian law. *Alternate Health USA Inc. v. Edalat*, 2022 WL 767573, at *10 (C.D. Cal. Mar. 14, 2022) ("applying Canadian law would still impose a substantial burden on both the Court and the jurors, to research, understand, and apply the foreign law" (cleaned up)). This factor weighs in the Shopify Defendants' favor.

(vii) <u>Existence of Alternative Forum.</u> "[Plaintiff] has the burden of proving the unavailability of an alternative forum." *Amoco*, 1 F.3d at 853. Here, Canada is an adequate alternate forum that recognizes MCS's contract and negligence claims and would permit MCS to file its claims. (Kolers Decl. ¶ 7.) This factor favors the Shopify Defendants. *Juniper*, 2021 WL 3514103, at *4 (citing cases holding that Canada is an "adequate alternative forum").

Exercising personal jurisdiction thus offends due process and is unreasonable. *Core-Vent*, 11 F.3d at 1490 (no personal jurisdiction where "the exercise of jurisdiction would not comport with fair play and substantial justice and would thus be unreasonable"). Accordingly, the Court should dismiss the Shopify Defendants from this case.

## D. MCS Lacks Statutory Standing to Bring Consumer Claims

MCS lacks statutory standing to bring claims under the California Consumers Legal Remedies Act ("CLRA") (Compl. ¶¶ 134-150); and the California Consumer Records Act ("CRA") (*id.* ¶¶ 162-177). A plaintiff must establish statutory standing to allege a plausible claim. *See Lexmark*, 572 U.S. at 128 (must establish statutory standing to show that plaintiff "has a cause of action under the statute"). To do so, the plaintiff must show it is "within the class of plaintiffs whom [the legislature] has authorized to sue." *Id.* at 125-26. Where a plaintiff fails to establish statutory

1   standing, courts dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

2   *Piper v. Cabillo*, 2014 WL 12631475, at *2 (N.D. Cal. Sept. 2, 2014) ("A dismissal for lack of

3   statutory standing is properly viewed as a dismissal for failure to state a claim." (cleaned up)).

4          Here, MCS cannot establish standing under the CRA and CLRA because it is a limited

5   liability company, not an individual customer or consumer (Compl. ¶ 9 (admitting MCS is a

6   "California Limited Liability Company"). Under the plain language of the CRA, only a "customer"

7   may "institute a civil action to recover damages." Cal. Civ. Code § 1798.84(b). The CRA defines a

8   "customer" as an "individual," which is in turn defined as a "natural person." *Id.* § 1798.80(c)-(d).

9   Similarly, the CLRA limits standing for a private action to a "consumer" (Cal. Civ. Code § 1780(a)-

10  (b)), which is defined as an "individual" (*id.* § 1761.)

11         Accordingly, MCS does not have statutory standing to bring claims under the CRA or CLRA.

12  *See Cumis Ins. Soc'y, Inc. v. Merrick Bank Corp.*, 2008 WL 215844, at *5 (D. Ariz. Jan. 22, 2008)

13  (no standing to bring claim under 1798.80(c) because statute "limits the relief to customers" and

14  plaintiff is a "corporation"); *Dipito LLC v. Manheim Inv., Inc.*, 2021 WL 5908994, at *15 (S.D. Cal.

15  Dec. 14, 2021) (dismissing CLRA claim because plaintiff "is a business," "not a consumer").

16  Because statutory standing is required, the CRA and CLRA claims must be dismissed. *See Muddy*

17  *Waters, LLC v. Super. Ct.*, 62 Cal. App. 5th 905, 922-23 (2021) ("The standing requirement is a

18  necessary prerequisite for a private party to bring a successful [] claim. Absent evidence to suggest

19  it has standing, plaintiff has not established a probability of prevailing on this cause of action.").

20  **V.    CONCLUSION**

21         MCS should have never brought these claims in California, let alone in two different fora.

22  And MCS should have immediately dismissed its claims against Shopify Inc. and Shopify USA once

23  Judge Carter issued his ruling enforcing the forum selection clause in the Plus Agreement. MCS's

24  failure to do so requires this Court and the Shopify Defendants to waste time and resources litigating

25  issues that have already been decided. The Shopify Defendants respectfully request that the Court

26  put an end to MCS's wasteful and unnecessary gamesmanship by dismissing its claims against the

27  Shopify Defendants with prejudice.

28

6415780

1   Dated: June 7, 2023                         **HUESTON HENNIGAN LLP**

2

3

4                                      By: _____

5                                           Moez M. Kaba

6                                           Attorney for Defendants
                                            Shopify Inc. and
7                                           Shopify (USA) Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6415780